**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0266n.06
Filed: April 7, 2009

**No. 08-3844**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| HECTOR GARCIA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| DAIMLER CHRYSLER CORP., UNITED AUTO | ) | |
| WORKERS LOCAL NO. 12, and DAN | ) | |
| HENNEMAN, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: KEITH, SUTTON, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

After allegedly overhearing a harassing comment made by one unionized employee to another, plaintiff Hector Garcia reported the incident by sending letters to his employer and to the home addresses of various union officials. Garcia lied about how he obtained the private home contact information, and defendant Daimler Chrysler suspended him pending an investigation. Plaintiff sued his employer, the union, and the union chairman for retaliation. The district court granted summary judgment in favor of defendants, and we affirm.

I.

Garcia is an hourly employee of defendant Daimler Chrysler Corporation and a member of defendant United Auto Workers Local No. 12 ("UAW" or "Union"). Garcia works in Chrysler's Toledo, Ohio plant as a "floater," meaning that he is assigned to various positions within the plant depending on the company's needs. Floaters are frequently transferred to different departments to cover for permanent employees who are sick or on vacation, or to fill other temporary vacancies. Because of the temporary nature of their work, these employees cannot use their seniority to displace permanent workers who are returning to their permanent positions.

Due to a previous injury, Garcia has a permanent medical restriction that prevents him from performing activities requiring "repetitive gripping" or from doing much lifting with his right hand. As a result of his injury, Garcia was placed within Chrysler's "PQX" system, meaning that he was physically qualified with restrictions and could only be assigned to jobs that he was capable of performing with his restrictions. If an employee within the PQX system was assigned to a job that he believed violated his medical restriction, he could request that the plant doctor make an evaluation. Chrysler, not the Union, was in charge of making PQX assignments.

The controversy leading to the instant case began on August 19, 2004, when Garcia allegedly overheard a conversation between Union secretary/treasurer Mark Epley and employee Connie Ramirez that occurred in the break room. According to plaintiff, Epley told Ramirez that he would send her to a Hispanic conference in Chicago if she would spend a night with him in a hotel and another night with defendant Dan Henneman, chairman of the UAW Jeep unit. Bob Morrissey and Richard Lott, both of whom were Union officials, were also in the break room.

Garcia reported the conversation to Union steward Bill McCullough, who said that he would tell UAW Vice Chairman Daryl Peterson. McCullough asked Ramirez about the conversation. She did not confirm or deny it; she merely "put her head down," a gesture that McCullough assumed meant that it either happened or that she was embarrassed. McCullough told Garcia that there was nothing he could do if Ramirez was not going to complain, and he later told Ramirez that if she had been sexually harassed, or if she were to be sexually harassed in the future, that she should tell the person to stop and then tell an advisor, Union representative, or someone in labor relations.

Plaintiff alleges that he told Bruce Baumhower, the UAW President, about the incident and Baumhower believed him. Baumhower disputes this and testified that he called Epley about the Ramirez conversation, Epley denied it, and Baumhower reported this denial to Garcia. Garcia also claims to have contacted Dan Twiss, UAW's International Representative, although Twiss denies that he was contacted.

Garcia mailed a letter to Thomas Maxon, the Senior Manager of Human Resources at the Chrysler plant, and to the home addresses of a number of Union representatives. Garcia obtained the addresses from Fred Muir, his union steward. The letter stated:

> Labor Relations, and UAW Union Local 12
>
> I would like to file charges against Union Brother Mark Epley, for using his job as a tool for sexual harrassment [sic]. Mark Epley needs to be removed from his Union job, and discipline [sic].
>
> On August 19, 2004 I went on my break because I knew Connie Ramirez was working in the committee room. She was at the coffee pot, and did not see me walk in. Mark Epley was sitting in his office with the door open. I heard Mark Epley discussing a trip to Chicago for the Hispanic conference with her. He said I'll pay

your room for 3 days, and I'll pay your expenses, but he said you have to spend one night in a room with me because I'm sending you to Chicago.

She walked back to her desk and sat down. I looked at her and she shook her head. I rolled my chair over to her and whispered that Mark Epley had no right talking to her like that. She said, Hector, I just came back to work and I'm only part time, I might loose [sic] my job. I said it doesn't matter if you are full time or part time, you are not a whore and he can not use his job for sex. By that time my break was over and I went back to work.

On October 1, 2004 I approached Union Rep. Dan Twiss about the matter, and he said why are you telling me there is nothing I can do? I stopped and thought to myself, he doesn't want to help a minority because anoter [sic] Union Brother Rep. was involved. At this point I wiil [sic] file charges with labor relations at work and with the Hispanic Council.

Mark Epley should be removed from his Union job for trying to use his power to have sex.

Local 12 Member, Hispanic Member

Hector Garcia[1]

Garcia did not mention anything about Henneman in the letter because, unlike Epley, he believed that Henneman "wasn't a person like that," meaning a person who would take advantage of Ramirez.

Garcia's letter was the first time that he notified Chrysler management about Epley's comments. A number of Union representatives were concerned that Garcia mailed his letter to their home addresses because, in many cases, their home addresses were not public information. Both Chrysler and the UAW kept these addresses confidential to prevent the representatives from being harassed at home and to protect their privacy. Disclosure of such information violates company

---

[1]The original letter was written entirely in capital letters. For the sake of readability, we have changed the case.

policy; abuse of private information had recently resulted in episodes of identity theft. Chrysler policy allows it to discipline employees "up to and including discharge" for failure to provide information or for providing false information.

Chrysler formed an investigative team comprised of Maxon, labor relations supervisor Jean Hathaway, and Henneman. The investigation team interviewed Ramirez, who denied that she had been sexually harassed and provided a written statement to that effect. The team also interviewed Lott and Morrissey, both of whom denied that Epley had harassed Ramirez. The team questioned Garcia about how he obtained the addresses. At Garcia's request, his union representative, Raul Ledesma, was present. Garcia gave conflicting explanations regarding how he obtained the addresses. His answers ranged from finding them on the internet, to driving to the individuals' houses, to claiming that his wife found them. Eventually Garcia admitted that he obtained the addresses from Muir. Maxon described his confusion following this discussion with Garcia: "I still to this day don't know where they came from." The team then questioned Muir about the addresses, to which he repeatedly responded, "I plead the Fifth."

Chrysler suspended Garcia without pay pending its investigation into how he obtained the addresses. Maxon later explained that he believed the suspension was necessary because of Garcia's conflicting explanations:

> [W]e had such a difficult time – and I'll be very candid with you, I don't have any clue, didn't at the time as to what was true and what wasn't. So it had taken an inordinate amount of time and there was more that was going to have to take place, so his suspension was necessary in my opinion so that we could continue with the investigation.

Henneman confronted Garcia about the Epley incident and called him a liar. Plaintiff alleges that Henneman also swore at him.

Garcia filed a grievance with the UAW, and Chrysler reinstated him with backpay. Nevertheless, he filed a discrimination complaint with the EEOC, alleging that Chrysler and the UAW retaliated against him for reporting Epley's conversation with Ramirez.

Two weeks later, Chrysler Area Manager Brian Tringali transferred Garcia from the material handling department back to his home department because the material handling department "was over roll," meaning that it had more employees than it needed. He was sent home on several occasions because there was no work for him. He returned to work but was assigned to a position that violated his medical restrictions, so Chrysler transferred him back to his previous job as a forklift operator.

The EEOC issued a determination letter stating that it found sufficient evidence to support a retaliation claim. Garcia then brought the present action in the United States District Court for the Northern District of Ohio, claiming retaliation in violation of Title VII and OHIO REV. CODE § 4112. The district court ultimately granted summary judgment in favor of defendants, and Garcia appealed.

II.

We review a district court's grant of a motion for summary judgment de novo. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 374 (6th Cir. 2007). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(c). The moving party has the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When determining whether the movant has met this burden, we must view the evidence in the light most favorable to the nonmoving party. *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007).

III.

Garcia argues that defendants retaliated against him for reporting Epley's conversation with Ramirez. To establish a prima facie claim of retaliation under Title VII and Ohio law,[2] Garcia must show that: (1) he engaged in protected activity; (2) defendants knew that he engaged in the protected activity; (3) defendants subjected him to an adverse employment action; and (4) the adverse employment action was causally connected to the protected activity. *Ladd v. Grand Trunk Western R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009). If plaintiff can establish a prima facie case, the burden shifts to defendants to articulate a "legitimate, nondiscriminatory reason" for their actions. *McDonnell Douglas Corp. v. Green,*, 411 U.S. 792, 802 (1973); *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008). If defendants make this showing, the burden shifts back to plaintiff to show that defendants' proffered reason is merely "a pretext to hide unlawful discrimination." *Russell*, 537 F.3d at 604.

A.

---

[2] Ohio courts apply Title VII jurisprudence to the interpretation of OHIO REV. CODE § 4112. *Ohio Civ. Rights Comm'n v. David Richard Ingram, D.C., Inc.*, 630 N.E.2d 669, 674 (Ohio 1994).

Plaintiff argues that Chrysler retaliated against him by suspending him pending an investigation into how he obtained the addresses and by transferring him to a job that violated his medical restrictions.

1.

Garcia asserts that he met the prima facie elements of a retaliation claim regarding Chrysler's suspension of him pending its investigation. Chrysler argues that plaintiff has failed to establish a causal connection between the protected act and the suspension pending investigation. However, we need not resolve this matter because, even assuming that plaintiff met his prima facie case, he cannot show that Chrysler's suspension of him was a pretext for retaliation. Thus, he has failed to carry his ultimate burden of persuasion in a manner that would allow for a reasonable juror to find in his favor. *See Ladd*, 552 F.3d at 502 (concluding that it was unnecessary to analyze a prima facie case when a plaintiff cannot establish pretext).

Assuming arguendo that plaintiff could establish a prima facie case, the burden of production shifts to Chrysler to offer a non-retaliatory reason for the adverse employment action. *Id*. Chrysler asserts that its non-retaliatory purpose for suspending Garcia was his dishonesty and evasion in answering questions regarding how he obtained the addresses. In order to prevail, Garcia must show that this proffered reason either: "(1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action." *Id*. (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). Plaintiff cannot make this showing.

Garcia concedes that Chrysler's proffered reason for suspending him had a basis in fact; he admits that he was not truthful in responding to questions about how he obtained the addresses. Plaintiff offers no admissible evidence that his evasiveness did not motivate his suspension or that it was insufficient to warrant a suspension. Plaintiff argues further that Chrysler retaliated against him, not only by suspending him during its investigation, but by the mere act of conducting an investigation. We disagree. Garcia cannot create the need for an investigation by his own evasive conduct and then claim that the investigation itself was retaliatory. *See Driggers v. City of Owensboro, Ky.*, 110 F. App'x 499, 508 (6th Cir. 2004) (holding that an investigation into the facts surrounding plaintiff's complaints did not constitute improper conduct). The district court properly granted summary judgment in favor of Chrysler on this issue.

2.

Garcia's claim that Chrysler retaliated against him by transferring him to a different department fails for similar reasons. Chrysler asserts that it transferred Garcia, a floater, because the department he was working in "was over roll, meaning that it had more employees than necessary to fill the available positions." Plaintiff has failed to present any *admissible* evidence to show that Chrysler's explanation lacked a basis in fact, did not actually motivate the transfer, or was insufficient to warrant the transfer. Garcia proffers two reasons – Ledesma's statement and the EEOC letter – but neither is admissible for purposes of opposing a motion for summary judgment.

Ledesma, whom plaintiff describes as "a tried and true union official," stated that he "can't think of any other reason" for Chrysler's action other than retaliation. Garcia argues that "Ledesma's

testimony was based on personal knowledge. He knew from experience how people are normally reassigned." The district court rejected the testimony because Ledesma admitted that his testimony was based on his "impression" of the events, rather than on specific information. We agree with the district court. Rule 56 requires "personal knowledge," and a statement that one cannot "think of any other reason" is not the same as a statement that one actually knew of the reason. Even if Ledesma knew "how people are normally reassigned," Garcia has not shown that Ledesma knew anything about this particular reassignment. Garcia argues further that Ledesma's statement is admissible as a statement by a party opponent. However, even if Ledesma's statement could be imputed to the Union, Garcia has not shown how it could be imputed to Chrysler. The district court properly excluded this statement.

Regarding the admissibility of the EEOC letter, Garcia relies upon the Ninth Circuit case of *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149 (9th Cir. 1982). In *Gifford*, the Ninth Circuit held that an EEOC investigation into whether the plaintiff had been treated differently than her male coworkers was sufficient to create an issue of fact in that case. *Id*. at 1156. However, Garcia has not identified any cases where the Sixth Circuit has made a similar determination. *See Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997) (ruling that a district court did not abuse its discretion in refusing to admit an EEOC probable cause determination letter). Garcia argues that the trial court has broader discretion to exclude an EEOC letter at trial than at the summary judgment stage, but offers no legal support for this proposition.

Garcia has not shown that Chrysler's reason for transferring him was a pretext for illegal retaliation.

B.

Garcia alleges that the Union retaliated against him by encouraging Chrysler's suspension of him and concurring in his transfer. The Union argues that it could not have retaliated against plaintiff by suspending him because it was Chrysler, not the Union, that issued the suspension. In fact, it was Henneman, on behalf of the Union, who persuaded Chrysler to reimburse Garcia for the time that he was suspended. Even if, for the sake of argument, the Union was responsible for suspending plaintiff, Garcia's claim of retaliatory suspension fails when applied to the Union for the same reason that it fails as applied to Chrysler. Garcia's evasiveness when questioned about how he obtained the addresses prevents him from being able to show that the suspension was pretextual.

Plaintiff has also failed to show that the Union, as opposed to Chrysler, was responsible for his transfer, other than by proffering Ledesma's statement, which we have already determined to be inadmissible. However, even if the Union's role in the transfer was coterminous with Chrysler's role, Garcia is still unable to show that the reason given for the transfer – his department being "over roll" – was pretextual.

The district court ruled that plaintiff's claim against the Union for retaliatory transfer failed, but it based its conclusion on Garcia's inability to make his prima facie case, rather than on his inability to establish pretext. Specifically, the district court determined that Garcia could not show that his transfer "was causally connected to his report as opposed to overstaffing in the stock

department."   Holding that Garcia's claim fails because he cannot show that his transfer was connected to his report, or holding that it fails because he cannot show that being "over roll" was a pretext for retaliation, are simply two ways of saying the same thing:  Garcia cannot succeed on his claim against the Union because he cannot show that it retaliated against him.  Whether we hold that Garcia cannot demonstrate the elements for his prima facie case, or show that the proffered non-discriminatory reason was pretextual, the result is the same.  Thus, we affirm the district court's grant of summary judgment in favor of the Union.

## C.

Garcia argued in his complaint and in his opposition to summary judgment below that defendants engaged in retaliatory harassment against him.  However, he did not raise this issue in his opening brief on appeal.  In his reply brief, he argued that the various incidents about which he complained in his opening brief amounted to retaliatory harassment in their totality.  He also argued, apparently for the first time, that "the legal review for retaliation and retaliatory harassment are nearly the same."

We have held that "[a]n argument raised for the first time in a reply brief will not be considered by this Court." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citing *Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986)); *Wu v. Tyson Foods, Inc.*, 189 F. App'x 375, 381 (6th Cir. 2006) (refusing to consider an issue not raised in appellant's opening brief even though the issue was preemptively raised in appellee's brief).  Garcia

did not raise this issue in his opening brief and has cited no authority that would excuse this waiver

merely because the issue is "nearly the same" as one that he did raise.

D.

Garcia asserts, without citation to authority, that the district court violated his Seventh

Amendment right to a trial by jury. He argues that "[i]n this case, where various witnesses disagreed

with each other about key facts and where affidavits were submitted at summary judgment

specifically to challenge facts set forth by Garcia, the lower court should not have ignored the

constitutional mandate to allow a jury to try Garcia's claims." This is nothing more than an attempt

to recycle Garcia's summary judgment arguments as somehow being Seventh Amendment

arguments. Garcia does not cite any authority supporting his Seventh Amendment argument, and

the perfunctory manner with which he has addressed this issue amounts to a waiver. *See United*

*States v. Villareal*, 491 F.3d 605, 611 (6th Cir. 2007) ("[I]t is a settled appellate rule that issues

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are

deemed waived.") (citation omitted).

IV.

Finally, Garcia sued Henneman under both Title VII and OHIO REV. CODE § 4112.02(I). The

district court cited *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997), for the proposition

that a plaintiff "cannot hold an individual liable for illegal retaliation under Title VII." Accordingly,

the district court dismissed the claims against Henneman. On appeal, Garcia does not challenge the

dismissal of the Title VII claim against Henneman but argues that the district court erred in

dismissing the state law claim against him. Plaintiff cites *Genaro v. Cent. Transp., Inc.*, 703 N.E.2d 782 (Ohio 1999) for the proposition that Ohio law allows liability to attach to individuals.

In *Genaro*, the Ohio Supreme Court held that "individual supervisors and managers are accountable for their own discriminatory conduct occurring in the workplace environment." 703 N.E.2d at 787. The court based its decision on the language of OHIO REV. CODE § 4112.01(A)(2), which defines the term "employer" as: "the state, any political subdivision of the state, any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." Thus, in order for liability to attach to Henneman, the local UAW leader, Garcia would have to show that Henneman met the statutory definition of "employer."

Even if plaintiff could make this showing, *Genaro* does not create a separate liability standard; it merely states that "for purposes of [§ 4112], a supervisor/manager may be held jointly and/or severally liable with her/his employer for discriminatory conduct . . . ." 703 N.E.2d at 787-88. Under *Genaro*, a supervisor's liability is joint and several with his employer. Therefore, because neither Chrysler nor the Union are liable for the reasons explained above, there is no liability to attach jointly or severally to Henneman.

V.

For these reasons, we affirm the judgment of the district court.