NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0283n.06

Case No. 23-5849

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jun 28, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| CHOUDHURY SALEKIN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| DENIS RICHARD MCDONOUGH, | ) | TENNESSEE |
| Secretary, Department of Veterans Affairs, | ) | |
| | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

Before: KETHLEDGE, THAPAR, and DAVIS, Circuit Judges.

THAPAR, Circuit Judge. After charging Choudhury Salekin with eight employment infractions, the Department of Veterans Affairs fired him. Salekin claims that violated federal antidiscrimination law. But he hasn't shown that the misconduct charges were pretextual. So we affirm the grant of summary judgment to the defendant.

I.

For nearly 25 years, Dr. Choudhury Salekin worked as a neurologist and sleep specialist for the Department of Veterans Affairs. His first two decades appear to have gone smoothly. Then things took a turn for the worse.

First, the VA had concerns with Salekin's work performance. In his last few years with the VA, Salekin scored poorly on performance reviews and failed a routine evaluation. He sometimes arrived late to work and failed to complete trainings. He also yelled at a nurse, left

patients' social security numbers in public areas, and neglected to properly record a few patients' diagnoses. So the VA relieved Salekin of his supervisory duties and asked two neurologists to independently review his case reports. Of the 20 reports reviewed, the neurologists agreed that 17 fell short of the standard of care.

Other concerns arose when a few of Salekin's female patients asked to see a new doctor. According to one patient, Salekin asked if she had a boyfriend and told her she was "much too pretty" not to have one. R. 79-3, Pg. ID 807; *see also* R. 79-1, Pg. ID 725 (noting patient complained that Salekin commented on "how well I looked for my age"). The patient claimed that Salekin later approached her in the building's coffee area, asking, "[S]o you still don't have a boyfriend?" R. 79-3, Pg. ID 807. Salekin denied making any inappropriate comments. But in an abundance of caution, the VA suspended Salekin from treating patients until a panel could investigate the allegations.

Ultimately, the panel corroborated the allegations. And, after listening to Salekin's side of the story, the VA issued him a written reprimand.

The VA also had concerns with Salekin's professional ethics. A nurse informed supervisors that Salekin was providing outside medical care while on the clock at the VA. Supervisors also heard that Salekin was making outside referrals for VA patients and using VA records and equipment for private gain. As a result, the VA locked Salekin out of his office and assigned him to a new workspace while his office was searched. In his office, investigators found "a large number" of documents related to Salekin's private practice. R. 79-2, Pg. ID 768.

Eventually, the VA fired Salekin. According to the VA, Salekin engaged in "improper conduct," created an "appearance of impropriety," and demonstrated a "lack of candor." R. 70-1, Pg. ID 551–55. It offered eight examples. Among them were that Salekin requested a psychiatric

evaluation of a patient who complained about inappropriate comments; placed a letter criticizing a VA nurse in a patient's medical record; and used VA resources in connection with his private medical practice.

After the VA fired Salekin, he sued. *See* 42 U.S.C. § 2000e-16. He alleged the VA discriminated against him based on his national origin. (Salekin is from Bangladesh.) He also alleged the VA retaliated against him for previous complaints he had filed with the Equal Employment Opportunity Commission. Finally, Salekin claimed the VA created a hostile work environment.[1] The district court granted summary judgment to the defendant on all claims. *Salekin v. McDonough*, No. 21-CV-00107 (WDC), 2023 WL 5538981, at *12 (M.D. Tenn. Aug. 28, 2023). Salekin appeals.

II.

To succeed on his discrimination and retaliation claims, Salekin must initially show that the VA disciplined him because of his national origin and because he filed EEOC complaints. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 727, 730 (6th Cir. 2014). Then, if the VA identifies legitimate reasons for the discipline, Salekin must introduce evidence showing that those "were not its true reasons, but were a pretext" to discriminate and retaliate. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quotation omitted).

We need not address whether Salekin has made his initial showing because, in either event, he hasn't shown that the VA's proffered reasons were pretextual. The VA claims it fired Salekin

---

[1] Because no party has raised the issue, we assume without deciding that Title VII's federal-sector provision, which supplies Salekin's cause of action, can give rise to retaliation and hostile-work-environment claims. 42 U.S.C. § 2000e-16(a); *see Green v. Brennan*, 578 U.S. 547, 551 n.1 (2016) (assuming without deciding that retaliation claims are covered); *id.* at 582 n.2 (Thomas, J., dissenting) (doubting they are); *cf. Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (founding hostile-work-environment claims on language that isn't present in the federal-sector provision).

because of his improper conduct, appearance of impropriety, and lack of candor.[2]  Thus, Salekin must show the VA's reasons are pretextual.  That is, he must show that the incidents didn't happen, don't explain his termination, or are otherwise a coverup for a discriminatory or retaliatory motive. *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 & n.4 (6th Cir. 2009).  And because the VA moved for summary judgment, Salekin "must produce evidence" to support his theory of pretext.  *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 502 (6th Cir. 2009).  Mere allegations that the VA's reasons are false won't do.  *See id.*

Yet that's all Salekin has.  Salekin claims the VA's reasons are pretextual, but he doesn't point to any supporting evidence.  He hasn't, for example, identified another employee who engaged in similar misconduct without being fired.  *See, e.g.*, *id.* at 503.  Nor has he introduced evidence of an ulterior motive for his firing.  *See Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012).  Or shown that the VA's story shifted over time.  *See Asmo v. Keane, Inc.*, 471 F.3d 588, 596 (6th Cir. 2006).  In short, Salekin hasn't "set forth evidence" suggesting the VA's rationales were a pretext to discriminate or retaliate.  *Browning v. Dep't of Army*, 436 F.3d 692, 696 (6th Cir. 2006).  That dooms his claims.

To be sure, Salekin denies the VA's allegations of misconduct.  But there's record evidence supporting each allegation.  And Salekin's mere denial—unsupported by affirmative evidence—doesn't defeat summary judgment.  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992).  He can't merely label the VA's evidence false and hope a jury will agree.  *Alexander*, 576 F.3d at 558.

---

[2] As the district court noted, the VA took other actions short of termination that might also qualify as adverse employment actions.  Generally, we would engage in a separate pretext inquiry for each adverse action.  After all, an employer may have different reasons for separate adverse actions.  But here, the district court and the parties discuss only the VA's reasons for firing Salekin.  We follow their lead.

Next, Salekin notes a jury could find that his misconduct charges were too minor to warrant termination. But the possibility that a jury might "disagree with the wisdom of the company's decision" doesn't show pretext. *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 510 (6th Cir. 2008). Pretext focuses on the VA's "motivation," not its "business judgment." *Ladd*, 552 F.3d at 503. So if an employer selectively enforces its misconduct policy, that might help show pretext. *See Blizzard*, 698 F.3d at 286–87. But Salekin can't show pretext simply by asking a jury to substitute its own business judgment about which infractions should be fireable offenses. *Cline*, 521 F.3d at 510. Yet that's exactly what he does.

In sum, because Salekin hasn't pointed to evidence of pretext, his discrimination and retaliation claims fail.

III.

The district court also dismissed Salekin's hostile-work-environment claim after holding that his workplace wasn't objectively hostile. *Salekin*, 2023 WL 5538981, at *12. In his appellate briefing, Salekin spends several paragraphs quoting the hostile-work-environment standard and associated caselaw. But he offers no analysis applying that standard to the facts here. Instead, he merely concludes that the VA's "numerous adverse actions . . . altered the terms and conditions of his employment such that [they] established a hostile work environment." Appellant Br. 24.

That doesn't suffice to properly present a claim to this court. On appeal, Salekin must "develop" his argument that the VA created a hostile work environment—not just recite the relevant standard. *See Ogbonna-McGruder v. Austin Peay St. Univ.*, 91 F.4th 833, 843 (6th Cir. 2024). And he must address the district court's reasons for granting summary judgment to the defendant on this claim. *See Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019). Salekin does neither. He doesn't explain how the VA's actions altered the terms and conditions

of his employment. He doesn't compare the VA's conduct to any caselaw finding a hostile work environment. And he doesn't explain why the district court was wrong to conclude that the "numerous adverse actions" weren't objectively hostile. Thus, Salekin has forfeited his hostile-work-environment claim on appeal.

*     *     *

We affirm.