NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0241n.06

Case No. 18-3969

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 06, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TRISHA ROMANO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| HUDSON CITY SCHOOL DISTRICT, et al., | ) | OHIO AT AKRON |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: ROGERS, DONALD, and THAPAR, Circuit Judges

**BERNICE BOUIE DONALD, Circuit Judge.** The Hudson City School District ("Hudson") in Ohio is one of the highest-achieving school districts in the country. Trisha Romano applied to work there as a teacher every year from 2012 through 2016. She was never hired and, eventually, stopped being interviewed. In 2017, Romano filed a complaint in the Northern District of Ohio alleging, among other things, age discrimination in violation of the Age Discrimination in Employment Act (the "ADEA") and Ohio law, aiding and abetting unlawful discriminatory practices in violation of Ohio law, and retaliation in violation of the ADEA and Ohio law. The district court granted summary judgment to Hudson on all of Romano's claims. We **AFFIRM**.

## I. Background

Romano initially graduated from college in 1996 with a degree in journalism. In 2002, with an eye toward teaching in the future, she went back to school and earned a degree in early childhood education. In 2004, Romano obtained a Masters of Arts in Education. From 2004 through 2012, Romano volunteered in her children's schools, substitute taught, and observed various classes as part of her post-graduate coursework. In 2012, Romano decided to become a full-time teacher and applied for a kindergarten-through-third-grade ("K-3") teaching position with Hudson.

Obtaining a teaching position in Hudson is difficult; hundreds of teachers apply for every opening. The hiring process is multi-tiered. First, a prospective teacher applying for a K-3 position completes an application on Hudson's online system, "AppliTrack." When doing so, the applicant is given the option of uploading additional documents, such as resumes, reference letters, cover letters, teaching licenses, portions of teaching portfolios, and evaluations. Hudson does not ask the applicant's age or birthdate, nor does it collect that information during this process. Second, the applicant takes an online assessment, which formulates a "Teacher Insight Score."

The interview process comes next. After Hudson receives the applicants' materials, several administrators, usually three principals, select the interview candidates by reviewing the Teacher Insight Scores and the entire application package, including college education, graduate degrees, past experience, and other endorsements and qualifications. When conducting first-round interviews, the principals choose from a standard set of questions, some of which come from research-based interview protocols. After the first-round interviews are completed, the interviewers discuss the candidates and assign pluses and negatives until they reach a consensus on who should proceed to round two.

In the second-round interviews, the applicants are interviewed by both administrators and teachers. The applicants are, again, asked standard questions from a question bank. One principal testified that the purpose of the second-round interview is "to dig deeper and see what specific examples or scenarios of how a teacher would handle those. What they value. Instructional practices." The interviewers make notes during both rounds of interviews, which Human Resources maintains. Similar to round one, after round two, the interviewers meet and discuss the candidates, assigning pluses and negatives. The administrators eventually reach a consensus on which candidates they recommend to the superintendent and the Board of Education be hired.

Romano applied for a teaching position with Hudson every year from 2012 to 2016. She was never hired, which she alleges was due to discrimination and retaliation.

In 2012, at the age of 38, Romano was interviewed but was not selected. At the time, Romano had volunteered in her children's classrooms, but she had never been a professional teacher. The interviewers told Romano that she should get more experience. Romano does not allege that anything in that process was improper, and she even took their advice. Beginning in 2013, she substitute taught at numerous schools.

In June 2013, Romano again applied for a K-3 teaching position at Hudson. She was not selected for an interview. She does not allege that this was due to discrimination, either.

In January 2014, however, Romano was hired at a school in Hudson as a full-time substitute teacher for the spring semester after another teacher had fallen ill. The hiring process for the substitute position was informal. Romano did not have to compete against any other applicants or even fill out an application. She emailed Lisa Hunt, the director of Human Resources, and volunteered to fill the position. Hunt and Jennifer Filomena, the principal of the school to which Romano was applying to substitute, consulted and decided to hire Romano. At the end of the

semester, Filomena evaluated Romano and rated her as proficient or distinguished in every area, the two highest ratings on the evaluation form. Filomena also wrote a letter of recommendation for Romano.

Later in 2014, Romano again applied for a K-3 permanent teaching position in Hudson. She was not selected for an interview. Romano understood that she was not selected because she did not have a reading endorsement, which was a new requirement in Ohio. Romano did not believe the decision was discriminatory at the time, but she later alleged that it could have been discriminatory. She asserts that the teachers the school hired were less qualified and substantially younger than she. For example, Romano points out that one of the new hires, Kristen Selner, née LaScola, had not completed her reading endorsement at the time of the interviews. However, LaScola was in the process of completing it and did so in mid-July 2014.

On July 30, 2014, Romano emailed Hunt and told her that the teacher for whom Romano had been a long-term substitute in the spring semester was going to be out for the entire upcoming school year. Romano volunteered to replace her again as a long-term substitute. Hunt and Filomena consulted and decided to re-hire Romano. Filomena testified that, during the school year, Romano required extra support because she "was not seeing her struggling readers as often as she should be." Filomena assisted Romano in restructuring her reading program and enlisted a retired teacher to make sure every student was given a developmental reading assessment. In January 2015, Filomena evaluated Romano again, marking that she was skilled or accomplished in every category except classroom environment. Filomena noted that Romano was "developing" in some areas of classroom environment. Filomena also wrote another letter of recommendation for Romano.

In February 2015, after completing an equivalent to the mandatory reading endorsement, Romano applied for a full-time K-3 teaching position for the 2015-2016 school year. She advanced to the second round of interviews but was not hired.

Three principals, including Filomena, interviewed Romano in the first round. According to Filomena's notes from the discussion following the interview, Filomena was concerned with Romano's classroom-and-behavior management, and all three principals expressed concern about Romano's ability to teach certain curricula and the amount of support Romano would need. Filomena also noted as a negative that, when Romano was asked why she should have been chosen over another candidate, Romano responded that she had "earned it," that her kids went to schools in Hudson, and that it was "her district." Even so, the principals felt Romano had done well enough to advance.

In the second round, Romano was interviewed by ten seasoned teachers and administrators. None of them thought Romano was a top candidate, and all expressed numerous, specific concerns. Collectively, the interviewers noted that Romano's answers were "surface level"; she failed to give concrete examples, even when asked for them; her demeanor was flat; she seemed entitled; there was concern about the depth of Romano's reading instruction and the level of support Romano would need; and Romano planned to teach literacy and math in a way that differed from Hudson's preferred methods.[1] Additionally, each interviewer stated that he or she did not know Romano's age before the interview.

---

[1]Sandra Gordon was concerned about Romano's ability to teach special-education children and her ability to motivate young children. Specifically, Gordon stated that Romano gave a superficial answer as to how she would work with students with special needs and that Romano was flat in the interview, which did not bode well for her ability to motivate students. She also stated that Linda Hunt always informed the interviewers not to discuss a candidate's age and that Romano's age was not a consideration. Christina Wooley said that she recommended against hiring Romano because Romano's approach to teaching math and managing her classroom did not align with

Filomena and Hunt later told Romano in person that she was not going to be hired. On May 19, 2015, Romano sent an email to Hunt asking that the decision not to hire her be reconsidered. In the email, Romano wrote that two of the candidates who were hired, Shelby Mitchell and Kelly Smith, were less qualified than her because she had taught in the school system for 1.5 years, had received high marks on her evaluations, and her students' test scores were very good. Romano stated that "the only logical explanation [was] that [Hudson had not hired her] due to [her] older age." She also intimated that Mitchell was hired because her mother was a teacher

---

Hudson's and because Romano did not provide specific examples of her abilities as a teacher. Wooley stated that Romano was dropped from consideration early on because she was a poor fit. Rebecca Rice stated that Romano's plan for teaching literacy and math were both contrary to Hudson's philosophy. Rice also averred that Romano did not give specific answers to certain questions regarding literacy. Doreen Osmun is the Director of Curriculum at Hudson. She stated that she had concerns about Romano before the second interview because Osmun had observed Romano in her classroom, and Romano had issues with classroom management and overuse of paper worksheets. As for Romano's interview answers, Osmun said that Romano's answers in regard to literacy lacked specificity, that she would use curricula that was contrary to Hudson's philosophy, and that Osmun was concerned about the level of support Romano would need. Mark Leventhal was the principal of another Hudson elementary school and had some previous experience with Romano when she was a long-term substitute teacher. He interviewed Romano in round one and round two. He stated that he had reservations about Romano prior to interviewing her because Romano had not sufficiently prepared her end-of-year student evaluations and because subsequent teachers had expressed concern regarding Romano's reading instruction. Leventhal did not want Romano to work at his school. As to her interview responses, Leventhal noted that Romano provided non-specific answers to questions about teaching math and reading, and he was concerned about her answers regarding classroom management. He said that "Romano's interview responses were not even close to demonstrating what [he] was looking for in a teacher." Mary Beth DiPaola, a second-grade teacher who had worked with Romano for the 1.5 years Romano was a substitute teacher, stated that Romano was flat and defensive in the interview and that she gave non-specific answers. DiPaola also averred that Romano was not collegial when they worked together and that she was defensive when other staff members made recommendations to her. Laura Beth Trivelli, the principal at another elementary school in Hudson, interviewed Romano in both round one and round two. Trivelli did not think Romano should have advanced beyond round one. After round two, Trivelli did not recommend that Romano be hired because Romano's answers lacked specificity and Romano's lack of "understanding of balanced literacy was a glaring deficiency." Michelle Molchen did not recommend Romano because she appeared to be underprepared for the interview, her answers were mediocre, and she seemed to presume she would get the job.

in Hudson. In response, Hunt suggested that they meet in person and stated that "the interviews are one piece of the puzzle," and "[a]ge is not a factor."

On the same day, Romano's husband, Matthew Romano, who is an attorney, forwarded his wife's email to Phillip Herman, the superintendent of Hudson, and asked that Herman call him to discuss the matter. Mr. Romano and Herman spoke the next day. Mr. Romano relayed his and his wife's concerns about nepotism and age discrimination, but he said most of the conversation focused on the fact that Romano was more qualified than Mitchell and Smith. Apparently, Herman was resistant to the allegations that his administrators lacked integrity, but he agreed to look into the matter.[2]

Herman interviewed several members of the interview committee,[3] spoke with Hunt and Filomena, and reviewed Romano's evaluations and the interviewers' notes. He did not think anything was amiss in the process.

Herman and Hunt met with Romano on June 4, 2015, and reviewed the interview process with her, including the interviewers' concerns. Herman stated that he told Romano that experience is considered as a factor but age is not. Hunt described the meeting as positive, and both Hunt and Herman thought the matter was closed.[4]

Later that month, Romano applied and interviewed for an individual/small group instruction position with Hudson, but she was not hired. Instead, Hudson hired an applicant that was Romano's age or older. Romano does not allege that this constituted discrimination. Romano

---

[2]Herman testified that he did not deem the Romanos' accusations as an informal complaint of age discrimination and therefore did not follow Hudson's EEOC policy at the time.

[3]They were Filomena, Hunt, Osmun, Leventhal, and Trivelli.

[4]During the meeting, Hunt offered to meet with Romano at a later date to provide additional feedback. They met again on June 30, 2015.

also applied for more open teacher positions in late-summer 2015, but she was not selected for an interview.

In 2016, Romano, again, applied for open teaching positions in Hudson. She was not selected for an interview. In August 2016, Mr. Romano spoke with Herman after a Board of Education meeting. Mr. Romano told Herman that Mr. Romano was representing his wife and that he had concerns about retaliation, nepotism, and unfair hiring practices. Herman agreed to look into Mr. Romano's concerns. Herman stated that he "reviewed the situation again" and sent a letter on August 29, 2016, along with a copy of Hudson's nondiscrimination policy to Mr. Romano. In the letter, Herman wrote that age had not been a factor in the decision not to hire Romano, and he invited her to file a formal complaint if she so chose. Romano did not file a complaint and, instead, replied by letter on October 14, 2016, noting her vigorous disagreement. She did not apply for a position at Hudson in 2017.

Romano filed her complaint in the district court on March 30, 2017. The district court granted summary judgment on September 20, 2018. For the following reasons, we **AFFIRM**.

## II. ANALYSIS

We review a grant of summary judgment de novo. *Logan v. Denny's*, *Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *DePiero v. City of Macedonia*, 180 F.3d 770, 776 (6th Cir. 1999)). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When reviewing the record, all inferences are to be drawn in the light most favorable to the nonmoving party." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004) (citing *Timm v. Wright State Univ.*, 375 F.3d 418, 422 (6th Cir. 2004)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## A.    Age Discrimination

Romano first argues that the district court erred in granting summary judgment on her claim for age discrimination in violation of the ADEA and Ohio law.[5]

Under the ADEA, it is unlawful for an employer to fail or refuse to hire an applicant because of her age. 29 U.S.C. § 623(a)(1). Ohio has its own age discrimination statute, but "the elements and burden of proof in [an Ohio] state age-discrimination claim parallel the ADEA analysis."[6] *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998) (citing

---

[5]At the outset, we note that Romano has waived numerous arguments in her Statement of the Issues. In Issues Two, Three, Four, and Five, Romano asserts various theories that she was discriminated against because she was forced to interview after she had been a long-term substitute teacher and that she was "replaced" by younger applicants. She did not assert these theories in the district court; therefore, they are waived here. *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 614 (6th Cir. 2014). The same holds true for Romano's argument that there was direct evidence of discrimination. She had ample opportunity to present this argument below. She did not, and we will not consider it for the first time now. *Id.*

[6]The parties disagree over whether Romano's state-law discrimination claims are defaulted, time-barred, or neither. The issue stems from Ohio's complex statutory scheme governing claims for discrimination. The Ohio legislature has enacted four pathways by which a plaintiff may pursue a claim for discrimination. *See* Ohio Rev. Code Ann. §§ 4112.02, 4112.05, 4112.14, 4112.99. Three of them allow for a party to bring a civil suit, §§ 4112.02, 4112.14, 4112.99, and one allows the party to pursue a claim in an administrative proceeding, § 4112.05. However, Ohio generally requires a plaintiff to choose one pathway to the exclusion of the others. *See Leininger v. Pioneer Nat'l Latex*, 875 N.E.2d 36, 43-44 (Ohio 2007) ("R.C. 4112.02(N), 4112.08, and 4112.14(B) all require a plaintiff to elect under which statute (R.C. 4112.02, 4112.05, or 4112.14) a claim for age discrimination will be pursued . . . .") (footnotes omitted). Romano sued under both § 4112.14 and § 4112.99, but she has never elected one over the other. She argues she can pursue both simultaneously. Hudson, on the other hand, asserts that her state-law claims are defaulted because she never made her election. While a previous panel of this court agrees with Hudson's theory of default, *Wood v. Summit Cty. Fiscal Office*, 377 Fed. App'x 512, 514 (6th Cir. 2010), the law in this area is murky, *see Leininger*, 875 N.E.2d, at 44 ("[Section 4112.99] is not subject to the election of remedies."). Adding another layer of complexity is that the statutes of limitations governing claims under § 4112.14 and § 4112.99 vary greatly. Section 4112.14 has a six-year limitations period, whereas § 4112.99 can be either 180 days or 6 years, depending on the type of claim brought. *See Meyer v. UPS*, 122 Ohio St. 3d 104, 113-14 (Ohio 2009). Ultimately, we need

*McLaurin v. Fischer*, 768 F.2d 98, 105 (6th Cir. 1985)); *see also* Ohio Rev. Code Ann. §§ 4112.02, 4112.14, 4112.99.  Therefore, we need not consider Ohio law separately.

A plaintiff "may establish a violation of the ADEA by either direct or circumstantial evidence."  *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (citing *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008)).  Under either approach, the plaintiff must "show that 'age was the 'but-for' cause of the employer's adverse action.'"  *Blizzard v. Marion Tech. College*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).  Because Romano has waived her direct-evidence argument, we address only whether she can make out a claim based on circumstantial evidence.

Where a plaintiff submits only circumstantial evidence of discrimination, we analyze the claim using the familiar *McDonnell-Douglas*-burden-shifting framework.  *Blizzard*, 698 F.3d at 283 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  The plaintiff must first establish a prima facie case of discrimination.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  If she does so, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions.  *Id.*  If the defendant satisfies its burden, the plaintiff then has the obligation to prove that the proffered reason is pretextual.  *Id.* at 804.

To establish a prima facie claim for age discrimination, Romano must demonstrate that "1) she is a member of a protected class, 2) she applied for and was qualified for the position, 3) she was considered for and was denied the position, and 4) another individual of similar or inferior qualifications, who is not a member of the protected class, received the position."

---

not resolve these issues.  Even if we consider the entire scope of Hudson's conduct, Romano has no claim on the merits.

*Rodriguez-Monguio v. Ohio State Univ.*, 499 Fed. Appx. 455, 463 (6th Cir. 2012) (citing *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 622-23 (6th Cir. 2006)).

It is undisputed that Romano was in the protected class once she passed age 40, which occurred on January 13, 2014.  29 U.S.C. § 631(a); Ohio Rev. Code Ann. § 4112.14.  However, her age-discrimination claims fail because she cannot make out her prima facie case for not being hired in 2014, and she cannot show that Hudson's legitimate, non-discriminatory reasons for not hiring her in 2015 and 2016 were pretextual.

To the extent that Romano alleges she was discriminated against in 2014, she cannot show that she was qualified for the job and thus she fails to make out a prima facie case.  *See Wexler v. White's Fine Furniture*, *Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003) ("The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field.").  In 2014, certain K-3 teachers in Ohio were required to have a reading endorsement or a statutorily-delineated equivalent.  *See* Ohio Rev. Code Ann. § 3313.608(H).  The job for which Romano applied was one that required an endorsement or an equivalent.  Romano did not have the endorsement or an equivalent at the time, and she was not in the process of obtaining either one.  Therefore, she did not have the minimum objective criteria necessary for the job.  *Id.*  Her claim for age discrimination for not being hired in 2014 cannot be sustained.

Romano did obtain an equivalent to the reading endorsement in January 2015.  Thus, she argues that she has established her prima facie case for the 2015-2016 school year because Hudson

interviewed her but chose to hire Shelby Mitchell and Kelly Smith instead, both of whom were younger and less-qualified than she.[7]

In response, Hudson assumes that Romano has established her prima facie case but argues that it had legitimate, non-discriminatory reasons not to hire her. Specifically, Hudson points to its interviewers' notes, deposition testimony, and declarations, wherein each interviewer averred that Romano was not a good candidate. *See supra* n.2. The interviewers identified numerous common issues with Romano's interview responses, including that her answers were vague, that she would not be able to manage her classroom proficiently, and that she planned to use the incorrect curricula to teach math and reading. *Id.* These qualify as legitimate, non-discriminatory reasons not to hire Romano.[8] *See Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 624 (6th Cir. 2006) (finding that a defendant had given sufficient non-discriminatory reasons for deciding to retain one employee over another employee because the retained employee had a better

---

[7]Romano further alleges that Hudson's failure to interview her in 2016 stemmed from the same discriminatory conduct, but she does not provide additional argument on this point. We assume she is making a general allegation that Hudson's reasons for not hiring her in 2016 are pretextual because it discriminated against her on the basis of her age in 2015. As is discussed below, the record does not establish that Hudson discriminated against her in 2015. Because Romano does not provide specific comparators or argument as to why Hudson's reasons for not interviewing her in 2016 were pretextual, she has not established a genuine issue of material fact as to that issue either.

[8]Romano argues that Hudson has not carried its burden here because it did not establish that its reasons furthered a "business necessity." However, Romano has conflated the legal standards governing claims of discrimination based on disparate treatment and disparate impact. It is only in the latter that an employer must show its actions furthered a business necessity. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 52-54 (2003) ("This Court has consistently recognized a distinction between claims of discrimination based on disparate treatment and claims of discrimination based on disparate impact. . . . [C]ourts must be careful to distinguish between these theories."); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609-10 (1993). Romano has submitted no proof or argument to support a claim for discrimination based on disparate impact, and we will not commingle the analyses for these distinct claims. *See Acree v. Tyson Bearing Co.*, 128 Fed. App'x 419, 425-26 (6th Cir. 2005).

merchandising track record and because he understood and embraced the company's preferred merchandising system more so than the other applicant).

Romano "can demonstrate pretext by 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id.* (quoting *Wexler*, 317 F.3d at 576). We have held that the relative qualifications of the applicants can establish a triable issue of fact as to pretext. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626 (6th Cir. 2006). To do so, however, the evidence must "show[] that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) [the] plaintiff was as qualified . . . if not better qualified than the successful applicant, and the record contains 'other probative evidence of discrimination.'" *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011) (citation and internal quotation marks omitted).

Romano does not clearly specify which method she seeks to use to show that Hudson's proffered reasons for not hiring her are pretextual, but the thrust of her argument is that, because she was much more qualified than Smith or Mitchell, no reasonable employer would have chosen either over Romano.[9]

---

[9]Romano further asserts that Hudson only used the applicants' interview responses to differentiate among them and that such a subjective practice, by itself, should be looked upon suspiciously by courts. While there is support for this position in our precedent, *see Grano v. Dep't of Dev.*, 699 F.2d 836, 837 (6th Cir. 1983) (citations omitted), Romano's assertion is wholly unsupported by the record. No interviewer stated that they only used Romano's interview responses to gauge her candidacy, and some interviewers noted that the interview responses are just one piece of the equation. Moreover, it is unclear why Romano believes that describing the incorrect curricula to teach math and reading is a subjective rather than an objective concern. *Cf. Neff v. City of E. Lansing*, 724 Fed. App'x 448, 452-53 (6th Cir. 2018) (finding that a plaintiff's own subjective belief about the strength of her candidacy could not overcome the "concrete examples" the defendant put forth of the plaintiff's deficiencies).

The question before us, then, is whether Romano has demonstrated either that she was similarly-qualified candidate and there is other probative evidence of discrimination, or that she was a plainly superior candidate. As to the first avenue, the district court noted that Romano has not "produce[d] even a scintilla of evidence that the decision not to interview and/or hire her had anything to do with her age[.]" R. 125, PageID #5856. We agree that there is no probative evidence of discrimination. Each interviewer from round two averred that they were unaware of Romano's age at the time of the interview, and not one interviewer stated that age was a consideration. Romano has not rebutted this evidence, and nothing else in the record supports a finding of discrimination. Therefore, her claim can only survive if she was plainly superior to Smith and Mitchell.

> Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination. . . . [I]n the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former. In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual.

*Bender*, 455 F.3d at 626-27 (internal citations omitted). Courts must remain mindful that, in undertaking this inquiry, we do not act as a "'super personnel department,' overseeing and second guessing employers' business decisions." *Id.* at 627 (quoting *Verniero v. Air Force Acad. Sch. Dist. No. 20*, 705 F.2d 388, 390 (10th Cir. 1983)).

In comparing Romano's resume to that of Mitchell's and Smith's, Romano has some objective qualifications they do not. She has a master's degree and had worked as a long-term substitute in Hudson for 1.5 years, earning good-to-very-good evaluation scores in the process. Otherwise, though, Romano was not an appreciably-better candidate than Smith or Mitchell.

Smith had been a student teacher for an academic year at an elementary school, and at the time of her application, she had been substitute teaching in Hudson and in another school district for months. She had also worked as a private tutor in 2012 and 2014. As for Mitchell, she had student taught at a Hudson elementary school and was working as a long-term substitute in Hudson at the time of her interview. Further, Mitchell had previously worked as a private tutor and had taught pre-school in a foreign country. Mitchell also submitted a lengthy and meticulous portfolio with her application. The portfolio contained her proposed reading and math curricula and strategies for classroom management, all of which were noted negatives for Romano. More importantly, though, several interviewers noted that Smith and Mitchell articulated detailed answers in regard to their planned reading and math curricula—and such answers coincided with what Hudson preferred. Given the qualifications of each candidate, a reasonable employer could have chosen Smith or Mitchell over Romano. This finding comports with our previous decisions, such as in *Bender*, where we held that

> [c]onsidering the qualifications of Patton and Rafferty next to each other, a reasonable decisionmaker could make a plausible case for selecting Rafferty over Patton, based primarily on his years of experience and solid performance appraisals. Yet, a different, albeit also reasonable, decisionmaker could make a plausible case that Patton was the better candidate [even though he was not rated as highly on his performance appraisals].

*Bender*, 455 F.3d at 628. Thus, Romano has not established that she was the clearly superior candidate, and the district court properly granted summary judgment to Hudson on her claim for age discrimination for the 2015 school year.[10] *See id.* ("If two reasonable decisionmakers could consider the candidates' qualifications and arrive at opposite conclusions as to who is more

---

[10]Romano's claim against individual defendants for aiding and abetting Hudson in discriminating against her also cannot survive summary judgment because it depends on a predicate finding of discrimination.

qualified, [then] clearly one candidate's qualifications are not significantly better than the other's.").

## B.     Retaliation

The ADEA prohibits an employer from "discriminat[ing] against any of his employees . . . because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this [Act]." 29 U.S.C. § 623(d).  Ohio's retaliation provision mirrors that of the ADEA's, Ohio Rev. Code Ann. § 4112.02(I), and Ohio law follows federal law, *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Com'n*, 66 Ohio St. 2d 192, 196 (Ohio 1981).

Romano argues that Hudson retaliated against her by refusing to interview her for a teaching position in late summer 2015 and in 2016 after she complained about age discrimination. To state a claim for retaliation using circumstantial evidence, we, again, use the *McDonnell-Douglas*-burden-shifting framework.  *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010).

Even assuming *arguendo* that Romano has successfully established her prima facie case, she failed to advance any argument in the retaliation section of her brief in response to Hudson's proffer of legitimate, non-discriminatory reasons not to interview her.  For its legitimate,  non-discriminatory reasons, Hudson points to the following evidence:  it declined to hire Romano in 2012, 2013, 2014, and 2015, prior to her complaining about age discrimination; it did not re-interview any other finalist from 2015 in its hiring process for 2016; and the administrators who interviewed or who were responsible for choosing interview candidates after May 2015 submitted declarations stating that they chose not to hire or interview Romano because she had previously

interviewed poorly.  Hudson's explanations suffice as legitimate, non-discriminatory reasons not to interview Romano.

Romano does not argue that these reasons are pretextual, nor has she rebutted Hudson's stated reasons as untrue.  Thus, she has not carried her burden.  We affirm the district court's grant of summary judgment to Hudson on this claim.

### III.  CONCLUSION

Based on the foregoing, we **AFFIRM** the district court's grant of summary judgment to Hudson.